# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TURFWORTHY, LLC,             )
               Plaintiff,     )
     v.                  )          1:13CV390
                          )
DR. KARL WETEKAM & CO. KG,  )
              Defendant.    )

## MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is currently before the Court on a Motion to Dismiss [Doc. #14] for lack of personal jurisdiction and improper venue, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). For the reasons discussed below, the Court will grant Defendant's Motion to Dismiss.

## I.    FACTUAL BACKGROUND

The factual allegations of Plaintiff's Complaint [Doc. #4], taken as true for purposes of Defendant's Motion to Dismiss, allege that Plaintiff Turfworthy LLC ("Plaintiff") is a North Carolina limited liability company with its principal office and place of business in Greensboro, North Carolina, and Defendant Karl Wetekam & Co. KG ("Defendant") is a business association with its principal office and place of business in Germany. Defendant manufactures monofilament yarn for use in the manufacture of artificial turf and began supplying Plaintiff with various types of monofilament yarn in 2010. Plaintiff used the yarn as the principal raw material for the manufacture of artificial turf, which Plaintiff then sold to its customers. In addition to providing yarn used to make general landscaping artificial turf, Defendant also provided yarn for the specific purpose of a project commissioned by the Pittsburgh Pirates. Through a series of

purchase orders, confirmations, and email correspondence, Plaintiff and Defendant agreed upon various specifications for the yarn Defendant sold to Plaintiff. Furthermore, Defendant expressly warranted to Plaintiff that the yarn it supplied would be of good quality and would meet the agreed upon specifications.

Beginning in April 2012, Plaintiff discovered that much of the yarn supplied by Defendant was defective. These defects were latent in nature, and therefore, could not be discovered until the yarn was manufactured into artificial turf. Because of the defects in the yarn, Plaintiff is at risk for claims of breach of warranty and/or breach of contract from Plaintiff's customers who bought artificial turf products that were made using the defective yarn from Defendant. Furthermore, Plaintiff is unable to use any of the yarn provided by Defendant which remains in Plaintiff's inventory.

When Plaintiff discovered the defects, it notified Defendant in writing of the problems, and provided several additional notices in the months thereafter. However, Defendant took no action to provide a remedy for the defects. Finally, on November 30, 2012, Plaintiff notified Defendant that Plaintiff was entitled to return all yarn that Plaintiff still possessed and receive either the price of the yarn or a credit against sums for which the Defendant had invoiced Plaintiff. Defendant refused to correct the defects in the yarn, replace the yarn, take back the yarn, give refunds, or give Plaintiff any credit against outstanding invoices.

On March 21, 2013, Plaintiff commenced this action in state court by filing and issuing a "civil summons to be served with order extending time to file complaint and application and order extending time to file complaint," which allowed Plaintiff through April 10, 2013 to file

its Complaint. (Resp. to Mot. to Dismiss [Doc. #20], at 1.) Plaintiff then filed the Complaint in this lawsuit in state court on April 9, 2013, alleging a variety of state law claims, including breach of contract and breach of express warranties. Defendant removed the action to this Court. Defendant contends[1] that it filed suit in Germany against Plaintiff on March 21, 2013, seeking recovery of the outstanding invoices (Mot. to Dismiss Br. [Doc. #15], at 3; Nodoushani Decl. [Doc. #17-2], ¶ 5; Nodoushani Supp. Decl. [Doc. #25-2], ¶¶ 3-4), although Plaintiff had not been served with this lawsuit as late as October 8, 2013. (Resp. to Mot. to Dismiss [Doc. #20], at 5.)

Defendant now moves to dismiss this action for improper venue, as an improper anticipatory filing, and for lack of personal jurisdiction. Specifically, Defendant alleges that venue is improper because forum-selection clauses apply which make Germany the exclusive jurisdiction for disputes related to the transactions at issue. (Mot. to Dismiss Br. [Doc. #15], at 2.) This Motion to Dismiss is now ripe for review, and the Court will consider first the question of venue based on the forum-selection clauses, followed by the questions of improper

---

[1] Plaintiff asks that the Court disregard the Declarations of Manuel Nodoushani and Karl Wetekam submitted with Defendant's Motion to Dismiss because they were not signed under penalty of perjury or under oath. (Resp. to Mot. to Dismiss [Doc. #20], at 6.) However, these Declarations were signed under language stating that they were "duly sworn," and both of these declarants have submitted Supplemental Declarations [Docs. #25-1, #25-2] stating that they understood that they were providing sworn testimony to this Court under penalty of perjury in signing the original Declarations. (Supp. Wetekam Decl. [Doc. #25-1], ¶ 2; Supp. Nodoushani Decl. [Doc. #25-2], ¶ 2.) These Supplemental Declarations also confirmed that the statements in the original Declarations are true and correct, and incorporated those statements into the Supplemental Declarations, which were signed under penalty of perjury. (Supp. Wetekam Decl. [Doc. #25-1], ¶ 3; Supp. Nodoushani Decl. [Doc. #25-2], ¶ 3.) Therefore, the Court will consider the contents of both the original and the supplemental Declarations submitted by Defendant. However, at this stage of litigation, the Court assumes all allegations in the Complaint to be true, regardless of the content of Defendant's Declarations.

anticipatory filing and personal jurisdiction, if necessary.  See Sucampo Pharm., Inc. v. Astellas

Pharma, Inc., 471 F.3d 544, 550 n.3 (4th Cir. 2006) ("[A] district court has the discretion to

dismiss on the basis of improper venue before reaching the issue of personal jurisdiction."

(citing Ruhrgas AG v. Marathon Oil, 526 U.S. 574, 584-85, 119 S. Ct. 1563, 143 L. Ed. 2d 760

(1999); Leroy v. Great W. United Corp., 443 U.S. 173, 180, 99 S. Ct. 2710, 61 L. Ed. 2d 464

(1979)).

II.     MOTION TO DISMISS FOR IMPROPER VENUE

      Defendant contends in its Motion to Dismiss that when Plaintiff purchased Defendant's

yarn, it entered into an agreement with Defendant, which governs the transactions at issue in

Plaintiff's Complaint.  (Mot. to Dismiss Br. [Doc. #15], at 2 (citing Compl. [Doc. #4], ¶ 17).)

Specifically, Defendant contends that this agreement includes "Terms and Conditions" (Ex. 1

– Wetekam Decl. [Doc. #17-1], at 5; Supp. Wetekam Decl. [Doc. #25-1], ¶ 3), which were

incorporated by reference into the order confirmations, invoices, and purchase orders for the

sale of yarn to Plaintiff for its "landscaping" projects.  (Mot. to Dismiss Br. [Doc. #15], at 2.)

Defendant also contends that the sale of yarn for the Plaintiff's Pittsburgh Pirates project is

subject to a Limited Warranty (Ex. 2 – Wetekam Decl. [Doc. #17-1], at 6-9; Supp. Wetekam

Decl. [Doc. #25-1], ¶ 3), signed by principals of Defendant and Plaintiff, which also contains

a forum-selection clause.  (Mot. to Dismiss Br. [Doc. #15], at 2; Wetekam Decl. [Doc. #17-1],

¶¶ 5, 6; Supp. Wetekam Decl. [Doc. #25-1].)

      The relevant language in the Terms and Conditions states:

> The place of performance for all obligations arising from this contractual relationship, i.e. also for delivery and payment, shall be our registered place of business (Melsungen). If the purchaser is a trader, our registered place of business shall be the place of jurisdiction; however, we shall also be entitled to institute legal proceedings against the purchaser at its domicile. For the rest, the statutory place of jurisdiction shall apply.

(Ex. 1 – Wetekam Decl. [Doc. #17-1], ¶¶ 11.3, 11.4, at 5; Supp. Wetekam Decl. [Doc. #25-1], ¶¶ 3, 4.) The relevant language in the Limited Warranty reads:

> This limited warranty and the rights and obligations of the parties under this warranty are governed only by laws of the Federal Republic of Germany, without regard to its conflicts of laws principles. Sales of the Products by Dr. Karl Wetekam & Co. KG to the Purchaser are not subject to the United Nations Convention on the International Sale of Goods. The Purchaser agrees that exclusive jurisdiction and venue for any claims arising out of this limited warranty shall be the [sic] with the judicial authorities in Kassel, Germany and will be held in the German language.

(Ex. 2 – Wetekam Decl. [Doc. #17-1], ¶ 5.1, at 9; Supp. Wetekam Decl. [Doc. #25-1], ¶ 3.)

However, Plaintiff disputes Defendant's contention that the forum-selection clauses are part of its agreement with Defendant. (Pl.'s Resp. to Mot. to Dismiss [Doc. #20], at 3.) Furthermore, Plaintiff contends that even if the Court finds that either or both of the forum-selection clauses are part of the parties' agreement as to the transactions at issue, they are not mandatory and they are unenforceable. As to this contention, Plaintiff first argues that for a long time, it did not know that the documents sent by Defendant contained language in fine, inconspicuous print at the bottom stating, "Our Standard Terms and Conditions apply to all offers and sale contracts and are available for examination in the Internet at the following address: www.monofilaments.com/stc."[2] (Pl.'s Resp. to Mot. to Dismiss [Doc. #20], at 4; e.g.,

---

[2] Plaintiff also contends that some of the documents containing this language had a symbol that partially obscured the website address. (Pl.'s Resp. to Mot. to Dismiss [Doc. #20],

Ex. B – Williams Decl. [Doc. #21], at 18.)

Plaintiff also relies heavily on the fact that the document which Defendant represents as the "Terms and Conditions" is labeled "*General* Terms and Conditions," rather than "*Standard* Terms and Conditions," as the documents which purportedly incorporate the Terms and Conditions state. (Pl.'s Resp. to Mot. to Dismiss [Doc. #20], at 4.) Plaintiff further argues that neither forum-selection clause should be enforced, because they are inconsistent—the Limited Warranty forum-selection clause specifies Kassel, Germany as the forum for any litigation brought by Plaintiff, remaining silent as to a forum for litigation brought by Defendant, as opposed to the General Terms and Conditions, which specifies Melsungen, Germany as the forum. (Id. at 4-5.) Finally, Plaintiff also contends that no consideration was given to Plaintiff for the purported changes made in the Limited Warranty. (Id. at 5.)

Given Plaintiff's various contentions as to why neither of these forum-selection clauses should be enforced, this Court will discuss whether either forum-selection clause was properly incorporated into the parties' agreement governing the transactions at issue, and if so, whether the pertinent forum-selection clause or clauses are mandatory and enforceable.

a.    Standard of Review

"[A] motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." Sucampo Pharm., Inc., 471 F.3d at 550. "When an objection to venue has been raised under Rule 12(b)(3), the burden lies with the plaintiff to establish that venue is proper in the judicial district in which the

at 4; e.g., Ex. B – Williams Decl. [Doc. #21], at 28.)

plaintiff has brought the action." Plant Genetic Sys. v. Ciba Seeds, 933 F. Supp. 519, 526 (M.D.N.C. 1996) (citing Bartholomew v. Va. Chiropractors Ass'n., 612 F.2d 812, 817 (4th Cir. 1979)). In considering a motion to dismiss under Rule 12(b)(3) for improper venue, "the court is permitted to consider evidence outside the pleadings. A plaintiff is obliged, however, to make only a prima facie showing of proper venue in order to survive a motion to dismiss. In assessing whether there has been a prima facie venue showing, we view the facts in the light most favorable to the plaintiff." Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 365-66 (4th Cir. 2012) (citing Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004); Global Seafood Inc. v. Bantry Bay Mussels Ltd., 659 F.3d 221, 224 (2d Cir. 2011)).

The validity of a forum-selection clause raised by a Rule 12(b)(3) challenge in a diversity action is determined according to federal law. Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 650 (4th Cir. 2010) ("[A] federal court interpreting a forum selection clause must apply federal law in doing so."); Bassett Seamless Guttering, Inc. v. GutterGuard, LLC, No. Civ. 1:05CV00184, 2006 WL 156874, at *4 (M.D.N.C. Jan. 20, 2006) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)); see Gita Sports, Ltd. v. SG Sensortechnik GmbH & Co. KG, 560 F. Supp. 2d 432, 437-38 (W.D.N.C. 2008) (discussing the basis for determining validity of a forum-selection clause in a diversity action under Rule 12(b)(3)). If the Court accepts Defendant's argument that venue is improper based on a forum-selection clause, then this case must be dismissed, as the Court lacks jurisdiction to transfer a case to a court of a foreign nation. See Allen v. Lloyd's of London, 94 F.3d 923, 926, 932 (4th

Cir. 1996) (dismissing the lawsuit after holding that the forum-selection clause designating a foreign country was both mandatory and enforceable).

      b.      Were the forum-selection clauses incorporated into the parties' agreement?

In determining whether the parties agreed to one or both of the forum-selection clauses, Plaintiff contends that the United Nations Convention on Contracts for the International Sale of Goods ("CISG"), 15 U.S.C. App., governs this dispute, because this is an international sale of goods between parties located in contracting states of the CISG. (Resp. to Mot. to Dismiss [Doc. #20], at 6-7.) However, the same Terms and Conditions and the Limited Warranty expressly exclude the application of the CISG to claims arising out of the sale of Defendant's goods. (Ex. 1 – Wetekam Decl. [Doc. #17-1], ¶ 11.5 ("The laws of the Federal Republic of Germany shall apply for all claims arising from the present contract. The application of UN Sales Law shall be excluded."); Ex. 2 - Wetekam Decl. [Doc. #17-1], ¶ 5.1 ("This limited warranty and the rights and obligations of the parties under this warranty are governed only by laws of the Federal Republic of Germany, without regard to its conflicts of laws principles. Sales of the Products by Dr. Karl Wetekam & Co. KG to the Purchaser are not subject to the United Nations Convention on the International Sale of Goods.").) Therefore, if the parties formed an agreement that included the Terms and Conditions or the Limited Warranty, then the CISG would not apply. However, because the parties dispute forming a contract that included either the Terms and Conditions or the Limited Warranty, the CISG is applicable in determining whether these parties from applicable countries formed a contract that included one or both of these documents. See Belcher-Robinson, LLC v. Linamar Corp., 699 F. Supp. 2d 1329, 1335

n.4 (M.D. Ala. 2010) (explaining that the CISG applies in determining whether a purchase order with a clause excluding the CISG was part of the parties' agreement); <u>Zhejiang Shaoxing Yongli Printing & Dyeing Co., Ltd. v. Microflock Textile Grp. Corp.</u>, No. 06-22608-CIV, 2008 WL 2098062, at *2 (S.D. Fla. May 19, 2008) ("The CISG automatically applies to international sales contracts between parties from different contracting states unless the parties agree to exclude the application of the CISG . . . .").

"Under the CISG, modification of a contract requires the agreement of both parties." <u>CSS Antenna, Inc. v. Amphenol-Tuchel Elecs., GmbH</u>, 764 F. Supp. 2d 745, 753 (D. Md. 2011) (citing CISG, art. 29(1)). "Article 8 of the CISG provides that '[f]or the purposes of this Convention[,] statements made by and other conduct of a party are to be interpreted according to his intent where the other party knew or could not have been unaware what that intent was.'" <u>Id.</u> (citing CISG, art. 8(1)). "Statements made by a party are interpreted according to the understanding of a reasonable person, and '[i]n determining the intent of a party or the understanding a reasonable person would have had, due consideration is given to all relevant circumstances of the case including the negotiations, any practices which the parties have established between themselves, usages and any subsequent conduct of the parties.'" <u>Id.</u> (citing CISG, art. 8(2)-(3)). As discussed below, based on the facts currently on the record, the Court concludes that Plaintiff knew or should have known that Defendant intended the Terms and Conditions, as well as the Limited Warranty, to apply to their agreement.

The Terms and Conditions were incorporated by reference into the agreement by various documents sent to Plaintiff by Defendant, including order confirmations (<u>e.g.</u>, Ex. B – Williams

Decl. [Doc. #21], at 18), invoices (e.g., Ex. B – Williams Decl. [Doc. #21], at 22), and delivery notes (e.g., Ex. B – Williams Decl. [Doc. #21], at 25). Plaintiff's own Complaint shows that Plaintiff considered the order confirmations to be part of the parties' agreement regarding the transactions at issue. (See Compl. [Doc. #4], ¶ 8 ("In a series of purchase orders, confirmations, and e-mail correspondence, plaintiff and defendant agreed upon specifications for the various yarns . . . .").) Furthermore, Plaintiff's own correspondence with Defendant confirms this understanding: "Your Order Confirmation constitutes your company's contract to provide us yarns that meet your manufacturing specifications, which we relied upon in ordering these yarns." (Ex. C – Williams Decl. [Doc. #21-2], at 6.)

Additionally, Plaintiff claims that because these documents state that they incorporate "Standard Terms and Conditions," they cannot incorporate the document entitled "General Terms and Conditions," which Defendant contends is the incorporated document. While this reference is somewhat ambiguous, Plaintiff itself referenced and relied upon the document entitled "General Terms and Conditions" (calling it Defendant's "Standard Terms and Conditions") in an attempt to negotiate with Defendant prior to filing suit. Specifically, in a letter from Plaintiff's president, Ruth Williams, dated November 21, 2012, Ms. Williams states: "We also call your attention to the statement at the bottom of each of your company's Order Confirmations for all the yarns we ordered that your 'Standard Terms and Conditions apply to all offers and sales contracts . . . .' Section 9.2 of your Standard Terms and Conditions provides that . . . ." (Ex. 3 – Wetekam Decl. [Doc. #17-1], at 18; Wetekam Supp. Decl. [Doc. #25-1], ¶ 3; see Ex. C – Williams Decl. [Doc. #21-2], at 6 (referencing this November 21, 2012

correspondence).)

Although Plaintiff contends that it did not know of the incorporating language until shortly before November 21, 2012, it is clear that when the possibility of legal action became apparent, Plaintiff understood the document entitled "General Terms and Conditions" to be Defendant's "Standard Terms and Conditions," and attempted to use provisions in that document to reach a favorable resolution to the dispute. Plaintiff cannot have it both ways by actively trying to enforce part of the Terms and Conditions when it benefits Plaintiff, while later claiming that the same Terms and Conditions are not part of the agreement between the same parties. Therefore, Plaintiff knew or should have known that Defendant intended the Terms and Conditions to be incorporated into their agreement. As such, Plaintiff's contention that the incorporating statement in the order confirmations, invoices, and delivery notes is insufficient because it is inconspicuous and "wrongly worded" is unavailing.

Similarly, the forum-selection clause in the Limited Warranty likely governs the yarn sold for the Pittsburgh Pirates project. The parties appear to agree that if the Limited Warranty applies, it applies only to the yarn sold for use in the Pittsburgh Pirates project. The parties also agree that the Limited Warranty was sent to Plaintiff after the yarn for the Pittsburgh Pirates project was delivered to Plaintiff. However, even if, as Plaintiff contends, the Limited Warranty was not sent to Plaintiff until "well after-the-fact, including after the defective yarn was already woven into artificial turf and sold" (Pl.'s Resp. to Mot. to Dismiss [Doc. #20], at 14), Plaintiff does not dispute that its president, Ruth Williams, willingly signed and entered into the Limited Warranty, which unambiguously includes a forum-selection clause. Although the parties

apparently agreed to the Limited Warranty after the yarn was delivered, Plaintiff has not provided any case law or precedent leading the Court to conclude that the parties are not free to enter into a contract that modifies an agreement governing a transaction that may have already transpired.

To the extent that Plaintiff contends that no consideration was given to Plaintiff for the purported changes made in the Limited Warranty (Pl.'s Resp. to Mot. to Dismiss [Doc. #20], at 5), Plaintiff offers no explanation for why its president, Ruth Williams, signed the Limited Warranty (and does not contend that she did not sign it). Indeed, the Limited Warranty appears to have provided additional promises and guarantees that formed the basis of an additional cause of action for Plaintiff in this lawsuit. (See Compl. [Doc. #4], ¶¶ 19-23 ("Second Claim for Relief: Breach of Express Warranties").) Therefore, Plaintiff has not offered a viable explanation as to why this Limited Warranty, and the forum-selection clause therein, should not govern the transaction for the yarn sold for the Pittsburgh Pirates project. As such, the Court concludes that, for purposes of disposing of Defendant's Motion to Dismiss, the Limited Warranty governs the parties' dispute over the Pittsburgh Pirates project and the Terms and Conditions govern the remaining transactions at issue in the parties' dispute. Thus, the Court will now inquire as to whether the forum-selection clauses included in these two documents are mandatory, and if so, whether enforcement of these clauses would be unreasonable.

c.    Are the forum-selection clauses mandatory?

Given that the forum-selection clauses are part of the agreement between the parties, the Court now considers whether the forum-selection clauses are mandatory or permissive. "A

forum-selection clause can be either mandatory—providing the designated forum with exclusive jurisdiction over any disputes—or permissive—providing the designated forum with jurisdiction over the parties, but not necessarily exclusive jurisdiction." Gita Sports, Ltd., 560 F. Supp. 2d at 436 (citing Scotland Memorial Hosp., Inc. v. Integrated Informatics, Inc., No. 1:02-cv-796, 2003 WL 151852, at *3-4 (M.D.N.C. Jan. 8, 2003)). "As a general rule, a forum-selection clause 'will not be enforced as a mandatory selection clause without some further language that indicates the parties' intent to make jurisdiction exclusive.'" Id. (citing Scotland Memorial Hosp., Inc., 2003 WL 151852, at *4).

The pertinent language in Defendant's Terms and Conditions reads: "If the purchaser is a trader, our registered place of business shall be the place of jurisdiction; however, we shall also be entitled to institute legal proceedings against the purchaser at its domicile. For the rest, the statutory place of jurisdiction shall apply." (Ex. 1 – Wetekam Decl. [Doc. #17-1], ¶¶ 11.3, 11.4, at 5; Supp. Wetekam Decl. [Doc. #25-1], ¶¶ 3, 4.) Plaintiff does not dispute that it is a trader. Therefore, the forum-selection clause in this provision applies to Plaintiff, unless it is merely permissive or otherwise unenforceable. Plaintiff contends that this forum-selection clause is merely permissive, because it only refers to jurisdiction, rather than venue, and because use of the word "shall" does not automatically render the forum-selection clause mandatory. (Pl.'s Resp. to Mot. to Dismiss [Doc. #20], at 10.)

While Plaintiff is correct that the mere use of the word "shall" does not automatically render the forum-selection clause mandatory, the language used here is like that used in the mandatory clause referenced by the Fourth Circuit in its IntraComm, Inc. v. Bajaj opinion

discussing the Tenth Circuit's decision in <u>Excell, Inc. v. Sterling Boiler & Mech., Inc.</u>, 106 F.3d 318 (10th Cir. 1997). 492 F.3d 285 (4th Cir. 2007). The Fourth Circuit favorably noted the Tenth Circuit's conclusion that the following forum-selection clause was mandatory: "Jurisdiction shall be in the state of Colorado." <u>Id.</u> at 290 (citing <u>Excell, Inc.</u>, 106 F.3d at 320). The forum-selection clause in the Terms and Conditions similarly states that Defendant's registered place of business (Melsungen, German) "shall be *the* place of jurisdiction," indicating an intent to exclude other places of jurisdiction for purchasers bringing suit against Defendant. (Ex. 1 – Wetekam Decl. [Doc. #17-1], ¶¶ 11.3, 11.4, at 5 (emphasis added).) This is in contrast to clauses using the term "shall" that do not contain language that excludes jurisdiction elsewhere. <u>See id.</u> at 290 (concluding that the forum-selection clause at issue (". . . either party shall be free to pursue its rights at law or equity in a court of competent jurisdiction in Fairfax County, Virginia") was permissive).

The forum-selection clause in the Limited Warranty is even more clearly mandatory. The pertinent language reads, "The Purchaser agrees that exclusive jurisdiction and venue for any claims arising out of this limited warranty shall be the [sic] with the judicial authorities in Kassel, Germany and will be held in the German language." (Ex. 2 – Wetekam Decl. [Doc. #17-1], ¶ 5.1, at 9; Supp. Wetekam Decl. [Doc. #25-1], ¶¶ 3.) This language unequivocally establishes exclusive jurisdiction in Kassel, Germany. Therefore, these forum-selection clauses are mandatory and apply unless Plaintiff can clearly show that their enforcement would be unreasonable under the circumstances.

> d. Has Plaintiff clearly shown that enforcement of the forum-selection clauses would be unreasonable under the circumstances?

Given that these forum-selection clauses are mandatory and properly incorporated into the agreement, this Court must dismiss the case if one or both forum-selection clauses are valid.[3] Under federal law, forum-selection clauses are presumptively valid and should be enforced unless the opposing part clearly shows that enforcement is unreasonable under the circumstances. Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996) (citing M/S Bremen, 407 U.S. at 10, 92 S. Ct. 1907). The Fourth Circuit has summarized the test for whether a forum-selection clause is unreasonable as follows:

> Choice of forum and law provisions may be found unreasonable if (1) their formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

Id. (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991); M/S Bremen, 407 U.S. at 12-13, 15, 18, 92 S. Ct. 1907). "The Allen factors do not represent an elemental test, with the satisfaction of each element being a necessary condition." Gita Sports, Ltd., 560 F. Supp. 2d at 440. "Rather the factors are just that: factors meant to inform the Court as to the clause's reasonableness." Id.

---

[3] To the extent that Plaintiff argues that these two forum-selection clauses are inconsistent, and therefore, neither should be enforced, the Court notes that the parties appear to agree that if the forum-selection clauses are both deemed part of the agreement between the parties, and they are both determined to be mandatory and enforceable, then the Limited Warranty would govern just the sale of yarn for the specific purpose of completing the Pittsburgh Pirates project and the Terms and Conditions would govern the remaining transactions for sale of landscaping yarn. Therefore, enforcement of both clauses would not be inconsistent.

Plaintiff contends that the <u>Allen</u> factors render the clauses unreasonable, because they are the product of overreaching, the grave inconvenience and unfairness of Germany as a forum would effectively deprive Plaintiff of its day in Court, and its enforcement would contravene a strong public policy of North Carolina, the forum state. The Court will now consider the <u>Allen</u> factors in turn.

1.      Fraud or Overreaching

Plaintiff does not contend that the forum-selection clauses were induced by fraud. However, Plaintiff contends that Defendant sought to unilaterally and inconspicuously add the forum-selection clause in the Terms and Conditions to the parties' agreement through using "one line of fine print in its documents referencing online Standard Terms and Conditions." (Pl.'s Resp. to Mot. to Dismiss [Doc. #20], at 14.) Plaintiff also contends that, on at least one occasion, Defendant sent a shipment without a purchase order, and on at least four occasions, Defendant sent Plaintiff shipments without confirmation. (<u>Id.</u> at 3; Williams Decl. [Doc. #21], ¶¶ 9, 10.)

Adequate notice is important in evaluating this factor, in part because it indicates that the party "presumably retained the option of rejecting the contract with impunity." 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3803.1, at 81 (4th ed. 2013) (quoting <u>Carnival Cruise Lines, Inc.</u>, 499 U.S. at 595, 111 S. Ct. 1522) (internal quotation marks removed). As previously explained, Plaintiff had adequate notice that the Terms and Conditions, which include the forum-selection clause, were part of its agreement with Defendant. Plaintiff even attempted to use other provisions in the Terms and Conditions in an attempt to negotiate

with Defendant prior to filing suit. Even if Plaintiff did not have actual knowledge of the provisions in the Terms and Conditions until shortly before November 21, 2012, Plaintiff had ample opportunity to become informed of the contents of the Terms and Conditions well before it allegedly did so. See Byrd v. Carnival Corp., No. 1:05cv417, 2006 WL 1367419, at *3 (M.D.N.C. May 16, 2006) ("[E]ven if [Plaintiff] did sign his boarding pass without reading the ticket contract, the Court notes that he had ample opportunity to become informed as to [Defendant's] terms and conditions . . . before he purchased the ticket for this cruise, during the 11-week span between purchasing his ticket and boarding, or in the years following his injury." (citing Lousararian v. Royal Caribbean Corp., 951 F.2d 7, 11 (1st Cir. 1991)). Therefore, Plaintiff had sufficient notice of the forum-selection clause in the Terms and Conditions.

Furthermore, Plaintiff contends that the forum selection clause in the Limited Warranty is "the product of overreaching by Defendant[,] because it would allow Defendant to sue anywhere, but purportedly limits Plaintiff's ability to seek redress in any locale other than Germany." (Pl.'s Resp. to Mot. to Dismiss [Doc. #20], at 14.) However, "[a]n inability or failure to negotiate concerning the disputed clause does not establish 'overreaching' by the drafter." Bassett Seamless Guttering, Inc., 2006 WL 156874, at *5 (citing Carnival Cruise Lines, Inc., 499 U.S. at 593-94, 111 S. Ct. 1522 (holding forum-selection clause included in adhesion contract valid); AC Controls Co., Inc. v. Pomeroy Computer Res., Inc., 284 F. Supp. 2d 357, 361 (W.D.N.C. 2003)). Plaintiff, a sophisticated business entity dealing in arms-length international transactions, does not contend that it lacked representation at any time throughout these transactions. Furthermore, Plaintiff does not identify any reason to believe that Defendant

specified German courts "in an effort to forestall Plaintiff's right to enforce the contract or pursue legitimate claims." See Bassett Seamless Guttering, Inc., 2006 WL 156874, at *5 (citing Carnival Cruise Lines, Inc., 499 U.S. at 593-94, 111 S. Ct. 1522). This factor therefore weighs in favor of enforcing the forum-selection clauses, because they were not the product of fraud or overreaching.

        2.       Inconvenience or Unfairness of the Selected Forum

Plaintiff also contends that "[t]he grave unfairness and inconvenience of the forum selection clauses in the [Terms and Conditions] and Limited Warranty would effectively deprive Plaintiff of its right to seek relief." (Pl.'s Resp. to Mot. to Dismiss [Doc. #20], at 14.) Plaintiff bases this contention on the following potential results of enforcing the forum-selection clauses: Plaintiff would be required to travel to Germany and submit to jurisdiction of two courts there, none of Plaintiff's representatives speak German, all the contract documents are in English (and were negotiated in English in Greensboro, North Carolina), Plaintiff's witnesses are located in the United States, and the defective yarn is located in Kernersville, North Carolina. (Id. at 14-15.)

However, "the expense of litigation is insufficient to invalidate a forum-selection clause, especially in a diversity case[,] . . . . not only because one side or the other will necessarily be burdened, but also because the parties presumably included that burden when they calculated the proper consideration to be paid under the contract." Gita Sports, Ltd., 560 F. Supp. 2d at 439 (citations omitted). Furthermore, "Germany has a civilized legal system[, and n]one of the circumstances mentioned by [P]laintiff . . . indicate that [P]laintiff could not maintain an action

in Germany." Id. at 438-39 (quoting Mackley v. Gruner & Jahr A.G. & Co., No. 93-civ-6521, 1995 WL 417069, at *1 (S.D.N.Y. July 13, 1995)) (internal quotation marks and citations omitted). "[A] party seeking to avoid a forum[-]selection clause must prove more than the inconvenience of litigating in a distant forum." Price v. Leasecomm Corp., No. 1:03CV685, 2004 WL 727028, at *4 (M.D.N.C. Mar. 31, 2004). Indeed, Plaintiff must prove that enforcement of the forum-selection clause would be so inconvenient that it would effectively deny Plaintiff its day in court. Id.; see Bassett Seamless Guttering, Inc., 2006 WL 156874, at *5 (explaining that the plaintiff did not meet its burden in establishing this Allen factor where the plaintiff made "no showing that its key witnesses [we]re unable to travel, that it [wa]s financially unable to pursue litigation in Colorado, or that it w[ould] otherwise suffer grave hardship if held to the terms of the forum-selection clause"). Here, the inconvenience and additional cost Plaintiff would incur in litigating is not so burdensome as to effectively deny Plaintiff its day in Court. Therefore, this factor also weighs in favor of enforcement.

    3.    Fundamental Unfairness

    The third Allen factor, the "fundamental unfairness of the chosen law may deprive plaintiff of a remedy," concerns the choice of law provision, rather than the forum-selection clause. Bassett Seamless Guttering, Inc., 2006 WL 156874, at *6. Plaintiff does not seem to contend that this factor applies. Therefore, as Plaintiff has the burden to clearly show that enforcement is unreasonable, the Court concludes that this factor weighs in favor of enforcement.

4. Contravention of a Strong Public Policy of the Forum State

Plaintiff finally contends that enforcement of the forum-selection clauses "would run afoul of the public policy of North Carolina set forth in N.C. Gen. Stat. § 22B-3," and therefore, it would be unreasonable to enforce them. (Pl.'s Resp. to Mot. to Dismiss [Doc. #20], at 15.) "In North Carolina, any agreement entered into in the state which purports to fix the forum for the parties' future litigation or arbitration in a location outside of North Carolina is unenforceable." Bassett Seamless Guttering, Inc., 2006 WL 156874, at *6 (citing N.C. Gen. Stat. § 22B-3). However, "the potentially persuasive value of § 22B-3, as an expression of North Carolina's policy concerning forum-selection clauses, is just one factor in this [C]ourt's analysis, which is governed by federal law, not state law." Id. at *7 (citing James C. Greene Co. v. Great Am. E & S Ins. Co., 321 F. Supp. 2d 717, 721 (E.D.N.C. 2004). Indeed, "[a] court cannot observe [the Supreme Court's] pronouncement that state public policies disfavoring forum-selection clauses do not invalidate such clauses, while at the same time holding that such a policy renders a clause at issue *per se* unreasonable and thus unenforceable." Cable-La, Inc. v. Williams Commc'ns, Inc., 104 F. Supp. 2d 569, 576 (M.D.N.C. 1999).

Therefore, the existence of this state statute does not trump the other factors discussed, all of which favor enforcement of the forum-selection clause. See Albemarle Corp., 628 F.3d at 651-52 (discussing several reasons why the appellant's argument that the forum-selection clause is unreasonable because it violates a similar statute in South Carolina fails). As such, this Court concludes that Plaintiff has not satisfied its burden to clearly show that these forum-selection clauses are unreasonable. Therefore, this Court will enforce the forum-selection

clauses and dismiss this case, as the Court lacks jurisdiction to transfer a case to a court of a foreign nation. Given that the Court will dismiss this action due to improper venue, the Court need not analyze whether Plaintiff engaged in an improper anticipatory filing or whether personal jurisdiction is present.

III.    CONCLUSION

For the reasons discussed above, the Court concludes that venue is improper. IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss [Doc. #14] is hereby GRANTED, and this action is dismissed, pursuant to Rule 12(b)(3).

This the 17th day of June, 2014.

United States District Judge